IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | Civil Case No. |
| Plaintiff, | |
| vs. | C O M P L A I N T |
| DELUXE FINANCIAL SERVICES, INC. | |
| Defendant. | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of sex, and to provide appropriate relief to Britney Austin, who was adversely affected by such practices.

As alleged with greater particularity below, the United States Equal Employment Opportunity Commission ("EEOC" or the "Commission") alleges that Defendant, Deluxe Financial Services, Inc. ("Deluxe"), engaged in unlawful discrimination against Austin, a woman who is transgender, because of sex by: (a) subjecting Austin to different terms and conditions because of sex, and (b) subjecting Austin to a hostile work environment because of sex. Additionally, Defendant had, and continues to maintain, a companywide policy or practice that discriminates against transgender female employees by precluding them use of a restroom that is consistent with their sex.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1), (3), and 706(g), as amended, 42 U.S.C. §§ 2000e-5(f)(1), (3), and (g), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Minnesota.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3), 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, a Minnesota corporation, with a principal executive address at 3680 Victoria Street N, Shoreview, Minnesota, has continuously been doing business in the state of Minnesota, and has continuously employed at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

6. More than thirty days prior to the institution of this lawsuit, Britney Austin filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant.

7. The EEOC provided Defendant with notice of the charge of discrimination.

8. EEOC investigated the charge of discrimination.

9. Based on evidence uncovered during the EEOC's investigation, EEOC issued a letter of determination to Deluxe Financial Services, finding reasonable cause to believe that Defendant had engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964.

10. The Commission's determination included an invitation for Defendant to join the Commission in informal methods of conference, conciliation, and persuasion in an attempt to eliminate and remedy the alleged unlawful employment practices.

11. Defendant participated with EEOC in conciliation, during which process Defendant and EEOC communicated regarding the alleged unlawful employment practices and how to eliminate and remedy them.

12. The Commission and Defendant were unable to reach an agreement acceptable to the Commission through the conciliation process.

13. The Commission sent notice to Defendant that conciliation had failed.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

15. Since at least 2010 and continuing until today, Defendant has maintained a companywide policy or practice with respect to transgender employees' use of restrooms resulting in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. §§ 2000e-2(a).

16. Defendant used to operate in Phoenix, Arizona, under the name "Deluxe Financial", and currently operates in twenty-seven (27) locations in the United States.

17. Defendant's headquarters are located in Shoreview, Minnesota.

18. Britney Austin is female.

19. She has been diagnosed with gender dysphoria.

20. Austin is transgender, having been assigned the male sex at birth but having a female gender identity.

21. By definition, transgender individuals identify and conform to a sex and gender different from the sex assigned to them at birth, contradicting dominant cultural expectations, assumptions, and norms that an individual assigned one sex at birth will or should identify with that same sex as their gender identity throughout their life.

22. Austin began her employment with Defendant Deluxe Financial Services in Phoenix, Arizona, on October 8, 2007.

23. When she applied for work with Defendant and for the first several years of her employment, Austin presented as male (e.g., she had a traditionally male name).

24. On or about October or early November 2010, Austin announced her intention to present as female at work to her local then-supervisor, Mike Jeffers.

25. On or around the middle of November 2010, Austin began to present female at work.

26. Around the end of 2010 or beginning of 2011, Rebecca Chavez replaced Jeffers as Austin's immediate supervisor.

27. On or about January 2011, Austin began hormone therapy as part of her gender transition.

28. Austin provided Deluxe with documentation of her gender dysphoria diagnosis.

29. On January 19, 2011, Austin spoke with Cynthia Ridley, the manager assigned to oversee Chavez's team, and to Araceli Hernandez, a Human Resources officer, about her transition.

30. Austin informed Ridley and Hernandez that on February 1, 2011, she was scheduled for a court date to change her name officially to Britney Erica Austin.

31. On January 19, 2011, Austin asked Defendant to be allowed to begin to use the women's restroom on the Defendant's premises after her name change.

32. In the January 19, 2011, meeting, Austin also asked that her sex-designation be changed in internal personnel and communications systems, including, *inter alia*, personal profiles, the email server, phone directories, and other personnel and communication systems.

33. Hernandez told Austin she could not change the status of her sex-designation in internal records without supplying proof of legal documentation acknowledging her name change.

34. After consulting with Tracy Warn, Human Resources Director for Defendant in Minnesota, Ridley and Hernandez told Austin that Defendant would not change Austin's sex-designation in internal records from male to female until Austin "completed the surgery portion of the gender change process."

35. On January 21, 2011 Warn, by email, ordered that Austin be prohibited from using the women's restroom.

36. Defendant's asserted reason for this prohibition was its "consideration" of "other employees."

37. In a meeting between Ridley and Austin on or about January 26, 2011, Ridley told Austin, "we've dealt with this before" after Austin again requested to use the women's restroom.

38. Austin is not the first transgender employee at Deluxe Financial who has requested to use a restroom consistent with his or her gender identity, but was prohibited from doing so.

39. On January 26, 2011, Hernandez and Ridley told Austin that she was prohibited from using the women's restroom on its premises.

40. Defendant did not preclude female employees who were not transgender from using the women's restroom.

41. On or about February 3, 2011, Austin provided Deluxe with documentation establishing her legal name change to Britney Austin.

42. On February 7, 2011, Austin asked her immediate supervisor, Rebecca Chavez, and Ridley, to change her name and sex-designation in Defendant's internal records. Instead of agreeing they asked Austin invasive medical questions about her gender transition and related surgeries.

43. Defendant changed the sex-designation and Austin's name only in some records, but left an erroneous male sex-designation and male name on other records.

44. On February 21, 2011, Austin emailed Ridley about additional internal records that needed her female name and female sex-designation reflected, including the company phone system.

45. Defendant did not change Austin's name or sex-designation in Defendant's customer phone ordering system or in two internal employee communication systems.

46. On March 18, 2011, Austin again emailed Defendant and asked that her name be changed to Britney on other internal records where her name was still registering under her former name.

47. On March 22, 2011, Austin emailed Chavez about correcting her name in internal records.

48. On or about May 27, 2011, Austin again approached Chavez and asked that her sex-designation be changed on all internal company records and systems.

49. Because many of Defendant's systems were not updated to reflect Austin's female sex and name, outside vendors, customers, and colleagues who contacted Austin

referred to her by her former male name, forcing her to correct them and explain that her name was Britney.

50. On June 1, 2011 – more than seven months after Austin first explained her gender transition to Defendant's officials and asked to be allowed to use the restroom consistent with the gender identity of female -- Austin approached Chavez and again asked that she be allowed to use the women's restroom and that all internal records be changed to accurately reflect her name and sex.

51. Austin had been consistently presenting as female since November, 2010.

52. On June 1, 2011, Austin provided Chavez with another medical note, this one from her doctor not only confirming her diagnosis of gender dysphoria but also requesting that Deluxe change all internal records to reflect Austin's female sex and proper name.

53. During the conversation on June 1st, Chavez asked to see Austin's license.

54. On June 2, 2011, Austin provided Chavez with her driver's license. The license was issued to Britney Erica Austin and designated Austin's sex as female.

55. Despite receiving Austin's medical records, notice of Austin's legal name change, and a copy of her driver's license, Defendant continued to deny Austin use of the women's restroom on its premises.

56. On June 6, 2011, a female employee reported that three days earlier she had seen someone she believed to be Austin using a women's restroom in a common shared area near the cafeteria, outside of the Deluxe offices, that both Deluxe and other tenants and customers in the building had the right to use.

57. The restroom near the cafeteria was not in the sole ownership, custody, or control of Defendant.

58. Hernandez immediately reported the incident to Warn via email, and added: "And just an FYI, the restroom that Britney was using wasn't one of the restrooms in Deluxe, it was in the common area part that we share with Fidelity."

59. On June 13, 2011, Warn instructed Hernandez via email to prohibit Austin from using the common female restroom, even though she acknowledged that "[h]onestly, I am not sure we can mandate her use of the bathroom outside of the call center, but let's keep that to ourselves."

60. Ridley and Hernandez informed Austin that she was not allowed to use the common restroom near the cafeteria although that restroom was outside of Deluxe's sole control.

61. During the conversation, Austin complained to Chavez that Defendant was violating her rights by refusing to recognize her gender identity and forcing her to use restrooms inconsistent with her gender identity.

62. After Defendant restricted Austin's use of women's restrooms throughout the building, Cynthia Perez, one of Defendant's managers, advised Austin to file a charge of discrimination with the EEOC.

63. From around the end of 2010 or beginning of 2011 until July 2011, some of Defendant's managers and Austin's co-workers repeatedly and intentionally referred to Austin with male pronouns and made derogatory statements about her female appearance,

even though they knew she had transitioned from male to female and that she wished to be referred to by female pronouns consistent with her gender identity.

64. Co-workers regularly referred to Austin in a demeaning and derogatory manner. For example, one coworker:

    a. Repeatedly and intentionally referred to Austin by using male pronouns;

    b. Referred to Austin as "boy;"

    c. Called Austin a "Cheetah;"

    d. Called Austin "Tarzan" to tease her about her hairiness, appearance, and clothes.

65. Another co-worker told Austin that she needed to make her hair more attractive.

66. Co-workers' harassment of Austin was done in such an open and notorious manner that Defendant knew or should have known that Austin was being subjected to a hostile work environment.

67. Supervisors and managers regularly referred to Austin with male pronouns and by her former male name when communicating with each other, even after Austin began to present as female at work.

68. On June 29, 2011, an outside vendor who came to do training for Austin and her co-workers made fun of Austin's female appearance during the staff training, and Austin's co-workers laughed at her publicly.

69. On July 7, 2011, Austin emailed Chavez and complained about some of the harassing comments.

70. In the email, Austin asked Chavez to warn her harassers that they should stop deliberately misgendering her and making offensive comments about her appearance.

71. Upon information and belief, Defendant neither investigated Austin's complaints nor disciplined any person whom Austin reported as having made harassing comments.

72. Continuing until late July 2011, when her employment with Defendant ended, Defendant continued to designate Austin as a male on many internal records, including the program hosting her personnel records, where her name was changed but not the designation of her sex.

73. Defendant never notified Austin's health insurance provider of Austin's sex-designation and name change, even though, according to the provider's policy, it was Defendant's responsibility under the policy to do so.

## FIRST CLAIM FOR RELIEF

### [Disparate Treatment Because of Sex – 42 U.S.C. § 2000e-2(a)(1)-(2)]

74. The allegations contained in the foregoing paragraphs are hereby incorporated herein by reference.

75. Defendant violated Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting Austin to disparate terms and conditions because of sex. Despite uncontroverted evidence that Austin's gender identity was female and that Austin had begun living and working full-time as female as part of a gender transition, Defendant refused to allow Austin to use the women's restroom and forced her to use the men's restroom instead.

76. Defendant imposed these terms and conditions of employment due to sex-based considerations – specifically, because:

   a. Austin is a woman who is transgender; and/or,

   b. Because of Austin's transition from male to female; and/or,

   c. Because Austin did not conform to Defendant's sex- or gender-based preferences, expectations, or stereotypes of women; and/or,

   d. Because of Defendant's sex- or gender-based expectations or stereotypes related to individuals assigned the male sex at birth.

77. The effect of the practices complained of in the foregoing paragraphs has been to discriminate against Austin with respect to the terms and conditions of her employment and/or to limit, segregate, and classify Austin in a way that deprives or tends

12

to deprive her of equal employment opportunities and otherwise adversely affect her status as an employee because of sex.

78. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

79. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Austin.

## SECOND CLAIM FOR RELIEF

### [Sex-Based Hostile Work Environment – 42 U.S.C. § 2000e-2(a)]

80. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

81. From around the end of 2010 through July 2011, Defendant engaged in unlawful employment practices, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by subjecting Britney Austin to severe or pervasive harassment, constituting a hostile work environment due to sex-based considerations – specifically, because:

   a. Austin is a woman who is transgender; and/or,

   b. Because of Austin's transition from male to female; and/or,

   c. Because Austin did not conform to Defendant's sex- or gender-based preferences, expectations, or stereotypes of women; and/or,

   d. Because of Defendant's sex- or gender-based expectations or stereotypes related to individuals assigned the male sex at birth.

82. As described with more particularity above, Defendant's managers and employees regularly subjected Austin to gender-based derogatory comments about her appearance, intentionally referred to her with male pronouns, and called her insulting names.

83. In addition, Defendant refused to change Austin's sex-designation to female or her name to "Britney" in many of the company's internal systems, which caused Austin upset and humiliation.

84. In addition, Defendant denied Austin use of all the women's restrooms in the building, including those on its premises as well as common or shared restrooms not solely within its control.

85. Despite Austin's repeated complaints about the harassing comments and conduct, Defendant created or tolerated this sex-based hostile work environment and failed to prevent or correct it.

86. The effect of the practices complained of in the foregoing paragraphs has been to deprive Austin of equal employment opportunities and otherwise adversely affect her status as an employee, because of sex.

87. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

88. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Austin's federally protected rights.

# **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in the unlawful conduct of discriminating against employees who have undergone, or are undergoing, a gender transition.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees who have undergone, or are undergoing, a gender transition and which eradicate the effects of its past and present unlawful employment practices.

C. Order other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D. Order Defendant to make Austin whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

E. Order Defendant to pay Austin punitive damages for its malicious or reckless conduct described in the foregoing paragraphs, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

Dated: June 4, 2015

            P. David Lopez
            General Counsel

            Gwendolyn Young Reams
            Associate General Counsel

            Mary Jo O'Neill
            Regional Attorney
            Phoenix District Office

            Rita Byrnes Kittle
            Supervisory Trial Attorney
            Denver Field Office

            <u>*/s/ Iris Halpern*</u>
            Iris Halpern
            Lead Trial Attorney
            Denver Field Office
            Telephone: 303-866-1374
            Email: iris.halpern@eeoc.gov

            <u>*/s/ Laurie Vasichek*</u>
            Laurie Vasichek (171438)
            Senior Trial Attorney
            Minneapolis Area Office
            Telephone: 612-335-4061
            Email: Laurie.Vasichek@eeoc.gov

            EQUAL EMPLOYMENT
            OPPORTUNITY COMMISSION